IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LORI L. MIKESELL, Petitioner, v. MICHAEL J. ASTRUE, Commissioner of Social Security Administration, Respondent. | Case No. CV 08-00247-S-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## Introduction

Currently pending before the Court for consideration is the Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed by Lori L. Mikesell ("Petitioner") on June 9, 2008. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"). For the reasons that follow, the Court will affirm the decision of the Commissioner.

## I.
## Procedural and Factual History

Petitioner first applied for disability insurance benefits on November 6, 1995 (AR 57-60), upon which disability was approved based on Petitioner's schizoaffective, bipolar, lumbar and

Behcet's impairments. (AR 62.)  A Continuing Disability review was conducted in October of 1999, concluding in December of 1999 that Petitioner had tried to work but was still disabled. (AR 268.)  In May of 2000, Respondent determined that Petitioner's health had improved, she was able to work, and she was no longer disabled.  (AR 277.)  Petitioner appealed that determination and a hearing was held before Administrative Law Judge ("ALJ") James Olson, who concluded in his finding on March 22, 2002, that Petitioner's disability ceased effective May 2000 due to medical improvement. (AR 503-511.)

Petitioner reapplied or protectively filed for a period of Title II Disability Insurance Benefits and for Title XVI Supplemental Security Income on December 17, 2003.  In both applications, Petitioner alleged onset of disability as of September 30, 2003.  The Petitioner's applications were denied initially and also upon reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge (ALJ) Hayward C. Reed held a hearing on March 22, 2006, taking testimony from Petitioner, Dr. Michael Enright, and vocational expert Anne Aestum. (AR 953-1021.)  At the time of the hearing, Petitioner amended her alleged onset of disability date to March 11, 2004.  ALJ Reed issued a decision finding Petitioner not disabled on August 14, 2006. (AR 25-46.)

Petitioner filed a timely appeal to the Appeals Council which denied her request for review on April 30, 2008, making the ALJ's decision the final decision of the Commissioner. (AR 9-11.) Petitioner appealed this final decision to this Court.  The Court has jurisdiction to review ALJ Reed's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 45 years of age.  She has a high school

**Memorandum Decision and Order - Page 2**

education and three years of college education. Her past relevant work includes sales clerk, teacher's aide, cafeteria attendant, and receptionist.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her the alleged onset date of March 11, 2004. At step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found the following combination of impairments to be "severe" within the meaning of the Regulations - degenerative disc disease of the cervical and lumbar spine, migraine headaches, depression, and anxiety. He found other impairments within the medical evidence to be non-severe, including Petitioner's Behcet's syndrome, rheumatoid arthritis, intermittent gastritis, slight vision problems, and history of alcohol abuse.

Step three asks whether a claimant's impairment or combination of impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. ALJ Reed determined that Petitioner had a residual functional capacity for a significant range of light work. He found she could lift and/or carry 10 pounds frequently and 20 pounds occasionally, sit, with normal breaks, for about 6 hours in an 8-hour workday, and could stand and/or walk, with normal breaks, for about 6 hours in an 8-hour workday, and she could occasionally climb,

**Memorandum Decision and Order - Page 3**

balance, stoop, kneel, crouch, and crawl.  He also found that she should avoid concentrated exposure to vibration and hazards.  She had moderate limitation in her ability to accept instructions, respond appropriately to criticism from supervisors, travel to unfamiliar places, and use public transportation.  He noted that, if she could perform light work, she also could perform sedentary work.

At step four, the ALJ found Petitioner was able to perform her past relevant work as a sales clerk, teacher's aide, cafeteria attendant, and receptionist, and that her past relevant work did not require the performance of work-related activities precluded by her RFC.  Having found Petitioner not disabled at step four, the ALJ did not address step five of the sequential evaluation process.

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *See* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).  An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal

**Memorandum Decision and Order - Page 4**

error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

> The Court cannot disturb the Commissioner's findings if they are supported by

substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Flaten*, 44 F.3d at 1457.  It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

> In reviewing a case under the substantial evidence standard, the Court may question an

ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence.  *Matthews v.*

**Memorandum Decision and Order - Page 5**

*Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

Petitioner believes the ALJ erred at the third and fourth steps of the sequential evaluation process. Specifically, she contends that the ALJ improperly rejected, during step three, the September 2005 opinion of Petitioner's treating source, Janelle Eckhardt, Ph.D, regarding Petitioner's depression and Listing 12.04. She further contends that the ALJ committed error in finding Petitioner's testimony to be non-credible and in misstating Petitioner's RFC during step four. The Court will address each of Petitioner's contentions in turn.

**A.     Opinion of Janelle Eckhardt, Ph. D.**

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 ((9th Cir. Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a non examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

**Memorandum Decision and Order - Page 6**

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id*.; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

Dr. Eckhardt, a licensed Ph.D. psychologist affiliated with Saint Alphonsus Pain Management Clinic, was involved with Petitioner's treatment for depression from April 5, 2005 through December 2005. On September 12, 2005, Dr. Eckhardt completed a disability form providing her opinion that Petitioner met Impairment Listing 12.04, given her psychiatric status of major depression. (AR 758, 772.) However, as outlined above, ALJ Reed rejected Dr. Eckhardt's opinion, for a number of reasons set forth in his decision.

The ALJ must give specific and legitimate reasons for not giving the opinion of Dr. Eckhardt controlling weight, which the Court finds he did. The ALJ noted that 20 C.F.R. § 404.1527(e) states that medical source opinions regarding a claimant's disability are opinions on issues reserved to the Commissioner, because they are administrative findings that are dispositive of a case. ALJ Reed set forth a lengthy summary of facts and conflicting clinical

**Memorandum Decision and Order - Page 7**

evidence, clearly articulating his interpretation of the evidence and making detailed findings. The Court finds that the ALJ's conclusion that Petitioner's impairments were not as severe as assessed by Dr. Eckhardt in September, 2005, was supported by substantial evidence.

In support of his rejection of Dr. Eckhardt's opinion, ALJ Reed noted that her conclusions were inconsistent with the signs and findings in the documented record, including her own records and those of other treating physicians. On April 5, 2005, Dr. Eckhardt examined Petitioner for the first time and noted that she was engaging, cooperative, and her thoughts were clear and linear. (AR 790-791.) Petitioner was to see Dr. Eckhardt on a weekly basis. On April 28, 2005, Petitioner advised the doctor that she had missed her appointment the prior week because she had been hospitalized for a depressive episode; however, the ALJ noted that there was no record in the file regarding this hospitalization. (AR 787.) Petitioner also was feeling more optimistic and bright. (AR 787.) In June 2005, Dr. Eckhardt stated that "[o]verall, [Petitioner's] mood was euthymic, and she was not in any crisis or distress." (AR 778.)

In August 2005, Dr. Eckhardt noted that Petitioner sounded much clearer, was more coherent and cognizant. (AR. 43). Shortly after her disability opinion in September 2005, Dr. Eckhardt noted that Petitioner's affect was bright and that her thoughts were clear and organized. (AR 863-864.) In October 2005, Dr. Eckhardt noted that Petitioner had made some strides and that she worked well with her two teenage sons. She was able to provide a stable environment and relationship for them. (AR 860.) On October 12, 2005, Dr. Eckhardt noted that Petitioner was feeling upbeat about entering a day treatment program (AR 861). In November 2005, Dr. Eckhardt noted that Petitioner's psychological functioning had a tendency to "ebb and flow" and that she was doing quite well psychologically. (AR 858.) In December 2005, Dr. Eckhardt stated

that, overall, Petitioner had made significant progress as her thoughts were more organized and she was able to hold onto a sense of hope during times of despair. (AR 855.)

To further support his rejection of Dr. Eckhardt's opinion regarding the Impairment Listing, the ALJ referenced the opinion of the medical expert, Michael Enright, Ph.D., who had reviewed the entire medical record regarding Petitioner's onset date and testified at the hearing. In Dr. Enright's opinion, Petitioner's mental impairments were documented under the "A" criteria of Listings 12.04 for affective disorders and 12.06 for anxiety-related disorders. He testified that Petitioner's mental impairments tended to wax and wane and, at their worst, they caused moderate limitations in activities of daily living, and mild limitations in maintaining social functioning and concentration, persistence, or pace, with no episodes of decompensation of an extended duration. (AR 961-989.) Therefore, ALJ Reed concluded that Petitioner's impairments had not caused marked limitation of functioning under two areas of the "B" criteria for meeting or equaling a Listing and that there was no evidence to establish the presence of the "C" criteria.[1] Based on the foregoing, the Court finds that ALJ Reed's conclusion that

---

[1] The C criteria of Listing 12.04 requires:

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1. Repeated episodes of decompensation, each of extended duration; or

    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for

**Memorandum Decision and Order - Page 9**

Petitioner's mental impairments did not meet the severity of sections 12.04 and 12.06 of the Listing of Impairments was supported by substantial evidence and not the product of legal error.

Although Petitioner criticizes the failure of Dr. Enright to consider medical evidence submitted after the hearing, and claims Dr. Enright was not present during her testimony at the hearing (Petitioner's Brief at 13, Docket No. 19), the ALJ included detailed findings regarding the additional records and the testimony of Petitioner, when summarizing, in detail, his rejection of Dr. Eckhardt's opinion regarding Listing 12.04.  Therefore, the conclusion of the ALJ is supported by substantial evidence and will not be disturbed by the Court.

Further, when rejecting the opinion of Dr. Eckhardt, the ALJ noted that Petitioner's statements regarding her daily activities did not support Dr. Eckhardt's findings.  The ALJ found that Dr. Eckhardt's opinions were inconsistent with Petitioner's activities of daily living, noting that Petitioner was capable of driving, taking care of her ailing elderly parents, as well as her 13-year-old twins, shopping, doing household chores, and attending doctor's appointments.

The ALJ also based his rejection of Dr. Eckhardt's opinion on the clinical records and opinions of other treating physicians of Petitioner.  For example, on January 12, 2004, Robert K. Perko, M.D., recorded that Petitioner's mood was normal and her anxiety was stable on Lexapro. (AR 739-740.) On June 2, 2004, Dr. Perko reported that Fioricet seemed to completely eliminate Petitioner's headaches and Effexor was working for her depression as she reported that she was only "mildly depressed." (AR 34, 731-732.)  On June 9, 2004, Dr. Perko noted that Petitioner's mood was okay and Effexor seemed to be effective. (AR 34, 730.)  On June 30, 2004, Petitioner

---

such an arrangement.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.04C.

**Memorandum Decision and Order - Page 10**

continued to report that her depression was "mild" and significantly improved from before. (AR 34, 729.)   In May 2005, Petitioner reported to Dr. Perko that her mood, neck pain and headaches were much improved. (AR 35, 713.)  Mental status examination revealed the Petitioner appeared happy and in no distress. Her eye contact, speech and thought processes and content were normal. She did not have hallucinations, delusions, or suicidal ideation. Her mood was good and her affect was broad and within normal limits. (AR 35, 713.) On July 20, 2005, Petitioner returned to Dr. Perko, and again her depression was stable and mental status examination was normal. (AR 35, 712.)

     The ALJ also pointed to other reports in the record that demonstrated that Petitioner's mental limitations were not as severe as suggested by Dr. Eckhardt. The ALJ noted that, in September 2004, Petitioner was seen in the emergency department for headaches but denied being depressed or suicidal.  Her mental status demonstrated that she was generally clear and appropriate, with normal speech and cognition. (AR 677-679.)  On October 18, 2004, Petitioner underwent a psychological consultative examination conducted by James Read, Ph.D. (AR 32, 689-696.) He noted that Petitioner's social skills were good; she was polite, pleasant, and cooperative. Contact with reality was good, and her veracity was excellent. She was articulate, well-organized and fairly intelligent. Her concentration and memory were adequate. Her immediate memory was excellent, recent memory was good, past memory was good and abstract thinking and judgment was good. Dr. Read noted that Petitioner appeared to have intelligence that was adequate for doing most kinds of clerical jobs and her ability to physically move around was adequate. She could understand instructions without difficulty, remember them well, and could sustain concentration adequately. He assessed a Global Assessment of Functioning (GAF)

**Memorandum Decision and Order - Page 11**

score of 55; which is indicative of only moderate mental symptoms. American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th TR. ed. 2000) (DSM-IV-TR). (AR 689-696.)

The ALJ also pointed to records of counseling received by Petitioner from Don Schultze, LCSW.  For example, in December 2004, Don Schultze noted that, despite his concerns regarding her drug-seeking behavior, Petitioner had made some good progress in terms of getting into a more stable setting and managing the instability of her own situation fairly well. He gave her a GAF score of 63 and later in December her GAF was 65.[2] In February 2005, he noted that Petitioner appeared to be fairly stable, and that she reported she was doing fairly well.  When he saw her in March of 2005, he noted that she seemed to be much more real and direct about herself, which Mr. Schultze felt was a good measure of progress for her.  When she attended a group session with him, she did well and was able to relate to the other parties, a sign of excellent progress for her.  At the time Petitioner was discharged from Mr. Schultze's counseling program in 2005, Petitioner was given a GAF of 68.  (AR 868-875.)

Based on the foregoing, the Court concludes that ALJ Reed properly reviewed and summarized the medical evidence within the record and adequately discounted  the medical source opinion of Dr. Eckhardt.  Further, he cited to treating, examining, and reviewing physicians to articulate an RFC based on evidence within the record. Thus, substantial evidence supports the ALJ's assessment regarding Petitioner 's limitations and will be upheld.

---

[2] A GAF score of 61-70 is defined as some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household).  American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders Text - Revision at 34, (4th ed. 2000) DSM -IV- TR).  GAF scores are properly considered in making credibility determinations. *Rollins v. Massanari*, 261 F.3d 853, 857 (9 th Cir. 2001).

**Memorandum Decision and Order - Page 12**

**B.     Petitioner's Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons.  *Reddick*, 157 F.3d at 722.  If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony.  *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record.  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).  If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing.  *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002).  When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in

claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

      Here, Petitioner asserts the ALJ did not properly evaluate the credibility of her testimony and challenges his finding that her testimony and other subjective complaints were not entirely credible. (Petitioner's Brief at 15-17, Docket No. 19.) However, the Court finds that the ALJ provided clear and convincing reasons for rejecting Petitioner's testimony that she was disabled by her impairments. According to Social Security Regulations and Ninth Circuit case law, an ALJ is required to consider a claimant's testimony regarding subjective symptoms such as pain or depression. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). This Court follows the two-prong test cited in *Smolen* in which a claimant: (1) must produce objective medical evidence of an impairment or impairments; and (2) must show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom. *Id*. If there is no affirmative evidence of malingering, the ALJ may only reject subjective symptom testimony for clear and convincing reasons. *Id*. at 1284. The ALJ is charged with determining credibility of medical testimony and resolving ambiguities in the evidence. *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999) (noting "[w]here, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation ...

**Memorandum Decision and Order - Page 14**

and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision") (*citing Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190 (9th Cir. 2004). The ALJ is not required to automatically credit or believe every allegation of disabling pain as such a requirement would essentially make disability benefits available on demand.

In the present case, medical evidence and Petitioner's testimony supports Petitioner's allegations that she experienced some limitations, but does not support Petitioner's allegations that she is incapable of working. If a claimant submits medical evidence of an underlying impairment, but testifies that she experiences pain (or other symptoms) at a higher level, the Commissioner may disbelieve that testimony. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985).

Petitioner's credibility was undermined by the lack of medical evidence to support the severity of limitations she claimed. In this case, the ALJ judged Petitioner's credibility based on his consideration of the entire record and provided clear and convincing reasons supported by substantial evidence for his determination. In her brief, Petitioner asserts that, although she had periods when her depression symptoms improved, she frequently relapsed into periods of dysfunction due to depression. The Court disagrees that the record, reviewed as a whole, support Petitioner's contention.

When explaining his conclusion that Petitioner's statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible, the ALJ cited to the medical evidence within the record to demonstrate that Petitioner could still function during

**Memorandum Decision and Order - Page 15**

periods of depression. The ALJ also pointed to inconsistencies between her claims of pain and dysfunction and her activities of daily living. He noted that, although Petitioner alleged that she has been totally disabled since March 11, 2004, she indicated in a daily activities questionnaire completed in February 2004, that she was able to care for her own personal needs, cooked, dusted, did dishes, went grocery shopping and attended doctor's appointments. She watched television, read books, listened to music, and did graphite drawing. She was able to swim, hike, volunteer at the children's high school, go to movies, attend church on a weekly basis, and go to sports activities. She took care of her elderly parents, and performed "life saving measures" on her father. The ALJ noted that Petitioner stated she had difficulty turning the knobs on her gas stove, but she was able to draw using graphite. She also indicated that she had painted her bedroom walls. (AR 40, 559-563.)

  The ALJ also noted that, on July 21, 2004, Petitioner advised Dr. Perko that she was attempting to find work, keep busy with art work and caring for her children. (AR 727.) In a Function Report completed August 2, 2004, Petitioner indicated that she was able to take care of her two 13-year-old twins, including cooking, cleaning, paying bills, driving, clothing, and making sure they get an education. (AR 578-585.) The ALJ also noted that, when Petitioner saw Dr. Eckhardt in April 2005, she was upset because she had to clean up the kitchen after her father had suffered incontinence. In April 2005, Petitioner reported to Dr. Eckhardt that she was burdened with taking care of both of her ailing parents and that her mother had broken her hip. (AR 40, 790.) Petitioner had also told her health care provider in August 2005 that she had done some outdoor gardening. Thus, the ALJ's conclusion that Petitioner's level of activity was inconsistent with that of a person as impaired as Petitioner claimed to be was supported by

substantial evidence in the record.

In further discrediting Petitioner's testimony, the ALJ cited to inconsistent statements made by Petitioner within the record. At the hearing, Petitioner admitted she tended to embellish things in order to "inflate" her ego. Also in a questionnaire completed June 16, 2004, Petitioner responded that she tells the truth "a little bit" and wanted to be honest about her problems "a little bit." Further, Petitioner admitted at the hearing that, when she was hospitalized in March 2004, after a week, she "was saying anything they wanted to hear in order to be able to get out." The ALJ articulated that his review of the record established that Petitioner did tend to embellish facts. She told the ALJ that she had been hospitalized five times during her life, but in October 2004, she had indicated that it was only three times. The record reflects only three hospitalizations. (AR 790.) The ALJ also pointed to Petitioner's testimony that she had not worked after her alleged onset date; however, the record revealed that she told an emergency room doctor in July 2004 that she was helping her sister clean houses. (AR 680.) The ALJ cited to several other inconsistent statements that he used to discredit Petitioner's testimony (AR 41), all of which are supported by the record.

To further support his credibility assessment, the ALJ noted that Petitioner began seeing Mr. Schultze in July 2004 through August 2004, but did not return to him until December 15, 2004, at which time she advised Mr. Schultze that she was interested in pursuing disability and felt that possibly seeing a psychiatrist and counselor would be helpful in that effort. (AR 872.) The ALJ concluded that "[i]t appears that her motives for seeking further treatment were more in efforts to obtain disability than to get help for her mental impairments." The ALJ also cited to Petitioner's many missed appointments and drug-seeking behavior to discredit her statements

**Memorandum Decision and Order - Page 17**

regarding her symptoms and claimed disability.

Based on the foregoing, the Court concludes that ALJ Reed's findings regarding the Petitioner's credibility, including his finding that her statements concerning the intensity, persistence and limiting effects of her symptoms was not entirely credible, was supported by substantial evidence in the record. The ALJ articulated clear and specific reasons for discrediting Petitioner's testimony. As such, the Court will not second guess the ALJ and will not disturb his findings.

### C.    Petitioner's Residual Functional Capacity

Petitioner argues that, by rejecting the opinion of treating source Dr. Eckhardt and by not finding Petitioner's testimony credible, the residual functional capacity ("RFC") determination by ALJ Reed did not adequately address all of the Petitioner's physical and mental restrictions. More specifically, Petitioner claims that her limitations from chronic pain and her non-exertional limitations from her long-standing psychiatric illness were not adequately addressed in the ALJ's finding. The Court disagrees.

Upon review of the record, the Court concludes that the ALJ's RFC finding properly accounted for all of Petitioner's credible limitations. After concluding Petitioner had certain severe impairments, the ALJ determined Petitioner's RFC before continuing to steps four and five of the sequential evaluation process. Petitioner's RFC is the most she can do considering her impairments and limitations. In determining her RFC, the ALJ was required to consider the whole record and explain how he assessed the medical evidence and testimony.

As outlined above and as detailed in his findings, ALJ Reed did consider the record as a whole, including Petitioner's admitted daily activities and the objective medical evidence, and

concluded that Petitioner was able to perform light work activity with the additional limitations outlined in the RFC assessment. Further restrictions identified by Petitioner are not supported by the record. Given the ALJ's finding was supported by substantial evidence and free of legal error, it will not be disturbed.

Further, the Court agrees with Respondent's claim that Petitioner failed to meet her burden of showing that she could no longer perform her past relevant work. ALJ Reed's finding at step four that Petitioner could perform her past relevant work was supported by substantial evidence and free of legal error. He relied on the vocational expert's testimony regarding the mental and physical demands of Petitioner's past relevant work. The vocational expert, after hearing the testimony and reviewing the record, testified that Petitioner would be able to perform her past relevant work as a sales clerk, teacher's aide, cafeteria attendant, and receptionist. (AR 45, 1014-1019.) Accordingly, the ALJ's finding that Petitioner could perform her past relevant work in light of her RFC was based on substantial evidence and will be upheld. Because the step four finding ended the sequential evaluation process, there was no need for a step five finding.

## V.
## Conclusion

Based on its review of the entire record, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error. Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be affirmed.

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled

**Memorandum Decision and Order - Page 19**

within the meaning of the Social Security Act be **AFFIRMED** and that the Petition for Review be **DISMISSED**.



DATED: September 30, 2009

Honorable Candy W. Dale
Chief United States Magistrate Judge